**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| CUTCHALL CAPITAL, LLC, a Nebraska Limited Liability Company, and OLD MARKET VENTURES, LLC, a Nebraska Limited Liability Company, <br><br> **Plaintiffs,** <br><br> v. <br><br> TRAVELERS CORP, and THE CHARTER OAK FIRE INSURANCE COMPANY, <br><br> **Defendants.** | **Case No. 26-CV-299** <br><br><br> **COMPLAINT** |

COME NOW Plaintiffs Cutchall Capital, LLC ("Cutchall"), and Old Market Ventures, LLC ("OMV") (collectively, "Plaintiffs"), and for their Complaint against Defendants Travelers Corp. and The Charter Oak Fire Insurance Company, state and allege as follows:

**PARTIES AND VENUE**

1.      Plaintiff Cutchall is a Nebraska limited liability company doing business in Douglas County, Nebraska. Cutchall is a citizen of the State of Nebraska.

2.      Plaintiff OMV is a Nebraska limited liability company doing business in Douglas County, Nebraska, and is a wholly owned subsidiary of Cutchall Capital, LLC. OMV is a citizen of the State of Nebraska.

3.      Upon information and belief, Defendant Travelers Corp. ("Travelers") is a Connecticut corporation, with its principal place of business in Connecticut, authorized to do business in the State of Nebraska and engaged in the business of selling insurance in Nebraska.

4.      Upon information and belief, Defendant The Charter Oak Fire Insurance Company ("Charter Oak") is a Connecticut corporation, with its principal place of business in Connecticut,

1

authorized to do business in the State of Nebraska and engaged in the business of selling insurance in Nebraska.

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 as there is diversity between the parties and the amount in controversy exceeds $75,000.00.

6.      Venue is proper because this cause of action arose in Douglas County, Nebraska, and the insured premises are located in this judicial district.

## THE INSURANCE POLICY

7.      Charter Oak issued Commercial Property Insurance Policy No. P-630-4W032306-COF-24 (the "Policy") to Plaintiffs, who are named insureds under the Policy.

8.      The Policy was in effect at all relevant times to this action, and all premiums due under the Policy were fully paid by Plaintiffs.

9.      The Policy provided property coverage, under which the insurer agreed to pay for direct physical loss of or damage to covered property caused by or resulting from a covered cause of loss. (Deluxe Property Coverage Form, DX T1 00 11 12, Section A(1)).

10.     The Policy defines "water damage" to include accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of plumbing, heating, air conditioning, or other system or appliance located on the premises. (Deluxe Property Coverage Form, DX T1 00 11 12, Section J(17)).

11.     The Policy provides additional coverage to pay the necessary cost of tearing out and replacing any part of a covered building or structure to repair damage to the system or appliance from which water or steam escapes. (Deluxe Property Coverage Form, DX T1 00 11 12, Section A(3)(m)).

12.    The Policy further obligates the insurer to pay the actual loss of Business Income sustained due to the necessary suspension of operations during the period of restoration, and to pay necessary Extra Expenses incurred to avoid or minimize that suspension. (Deluxe Business Income (and Extra Expenses) Coverage Form, DX T1 01 11 12, Sections (A(1) and A(2)).

## BACKGROUND FACTS

13.    Plaintiffs operate the Jams Restaurant (the "Restaurant") located at 1101 Harney Street, Omaha, Nebraska 68102.

14.    On or about May 16, 2024, sanitary drain lines from residential apartments above the leased premises leaked into the Restaurant, and Plaintiffs notified the lessor.

15.    The lessor attempted to repair the sanitary drain lines, which temporarily resolved the leak, but did not adequately fix the underlying problem.

16.    On or about June 29, 2024, the leak worsened, and Plaintiffs closed off parts of the Restaurant.

17.    On June 29, 2024, Plaintiffs determined that they could not operate the Restaurant safely and ceased operations that day.

18.    The direct physical loss to the premises occurred no later than June 29, 2024.

19.    June 30, 2024, was the first full day that the Restaurant was closed.

20.    The Restaurant remained closed until July 10, 2024, and reopened for a half day on July 11, 2024.

21.    During the period that the Restaurant was closed, Plaintiffs undertook all reasonable measures to mitigate damages and resume business operations, including engaging a plumber to address the lessor's failed sanitary drain line.

22.    The water damage resulting from the sanitary drain lines caused Plaintiffs to sustain loss of business income, extra expenses, and direct property losses, each of which constitutes a covered loss under the Policy.

23.    No exclusions or limitations in the Policy apply to bar coverage of the losses sustained by Plaintiffs.

## CLAIM SUBMISSION AND DENIAL

24.    Plaintiffs submitted Claim No. FXU0240 (the "Claim") under the Policy for the covered losses described above, and Travelers, on behalf of Charter Oak, assigned an adjuster to the claim.

25.    Plaintiffs submitted a Proof of Loss relating to the business interruption (the "Initial Proof of Loss").

26.    Travelers retained Meaden & Moore ("Meaden") to assist in adjusting the Claim and relied on Meaden's Initial Analysis dated December 26, 2024 (the "Initial Meaden Analysis").

27.    Charter Oak issued payment for the amount set forth in the Initial Meaden Analysis regarding business interruption coverage but denied the remainder of Plaintiffs' claim set forth in the Initial Proof of Loss, including all submissions for extra expenses and direct losses, without providing any reasoning for the denial.

28.    On June 2, 2025, Plaintiffs submitted an Amended Proof of Loss, supported by financial records and receipts, calculating total losses at $157,397.29, comprising $109,913.45 in business income loss, $10,792.20 in extra expenses, and $36,691.64 in direct property losses.

29.    On or about August 6, 2025, Travelers responded to Plaintiffs' Amended Proof of Loss by transmitting an updated Meaden analysis printed August 4, 2025 (the "Updated Meaden

Analysis"), which incorrectly identified the date of loss as June 30, 2024, and measured business income loss at $60,299.

30.    In transmitting the Updated Meaden Analysis, Charter Oak refused to pay the direct property losses, asserting that the plumbing repairs and related work were the responsibility of Plaintiffs' landlord under Section 5.1 of the lease, and requested additional documentation regarding a damaged television.

31.    Coverage under the Policy is not conditioned on whether a third party, including Plaintiffs' landlord, may also bear responsibility for the loss.

32.    The Policy expressly covers the necessary cost of tearing out and replacing any part of the covered building or structure to repair damage to the system from which water or steam escapes, and no provision of the lease is incorporated into the Policy as an exclusion or limitation.

33.    Nothing in the Policy conditions Defendants' obligation to pay covered loss on the insured first pursuing remedies against a third party.

34.    To the extent Defendants believed that the landlord bore responsibility for the loss, their remedy was to pay the covered loss and seek subrogation, not to deny the claim and leave Plaintiffs uncompensated.

35.    Charter Oak has made business interruption payments totaling $60,841.61, consisting of $6,384.61 paid on December 16, 2024, and $54,457.00 paid on December 27, 2024, both based on the Initial Meaden Analysis.

36.    After crediting those payments, the balance due and owing to Plaintiffs under the Policy is $96,555.68, comprising $49,071.84 in unpaid business income loss, $10,792.20 in extra expenses, and $36,691.64 in direct property losses.

37.   By written demand dated June 24, 2026, Plaintiffs, through counsel, notified Defendants of the foregoing and demanded payment of $96,555.68.

38.   Defendants have failed to pay the balance due and owing under the Policy.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

39.   The foregoing paragraphs are incorporated as if fully stated herein.

40.   The Policy is a valid and enforceable contract between Plaintiffs and Charter Oak, under which Charter Oak agreed to pay for covered direct physical loss or damage to covered property, business income loss, extra expenses, and the cost of tearing out and replacing portions of the covered property to repair the system from which water escaped.

41.   Plaintiffs have fully performed all of their duties and obligations arising under the Policy, including the payment of all premiums due and the submission of timely proofs of loss documenting their covered losses, and satisfied all conditions precedent to coverage.

42.   Plaintiffs sustained covered losses under the Policy in the form of business income loss, extra expenses, and direct property loss arising from the water damage to the insured Restaurant.

43.   Charter Oak breached the Policy by failing and refusing to pay the full amount for Plaintiffs' covered losses, including by denying Plaintiffs' claims for extra expenses and direct property losses and by underpaying Plaintiffs' business income loss.

44.   As a direct and proximate result of Charter Oak's breach, Plaintiffs have suffered damage in the amount of $96,555.68, together with prejudgment, post-judgment interest, and attorney's fees and costs.

## SECOND CAUSE OF ACTION: BAD FAITH

45.   The foregoing paragraphs are incorporated as if fully stated herein.

46.    As an insurer doing business in Nebraska, Charter Oak and Travelers owed Plaintiffs, their insured, a duty of good faith and fair dealing in the investigation, handling, and payment of their Claim.

47.    Defendants breached that duty and acted in bad faith by denying and delaying payment of benefits owed under the Policy without any reasonable basis for doing so, including by denying Plaintiffs' Claim for extra expenses and direct property losses on the asserted ground that the loss was the landlord's responsibility under the lease – a ground that provides no lawful or arguable basis to withhold payment of covered losses.

48.    Defendants knew of, or acted in reckless disregard of, the lack of a reasonable basis for denying and delaying payment of Plaintiffs' claim, including by failing to conduct a proper investigation and reasonable evaluation of the proofs of loss and supporting documentation Plaintiffs submitted, and by treating a lease provision as a coverage defense not contained in the Policy.

49.    As a direct and proximate result of Defendants' bad faith, Plaintiffs have suffered damages, including the wrongfully withheld policy benefits and consequential economic losses, in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

50.    Plaintiffs hereby demand trial by jury on all claims so triable.


WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants as follows:

A. A judgment against Defendants awarding Plaintiffs compensatory damages of $96,555.68 for breach of contract;

7

B.  A judgment against Defendants awarding Plaintiffs damages for Defendants' bad faith in an amount to be proven at trial;

C.  Awarding Plaintiffs prejudgment and post-judgment interest;

D.  Awarding Plaintiffs their attorney's fees and costs of this action as allowed by law;

E.  Granting such other and further relief as the Court deems just and equitable.


Dated this 28th day of June, 2026.


CUTCHALL CAPITAL, LLC and OLD MARKET VENTURES, LLC, Plaintiffs,


By:   */s/ Robert S. Sherrets*
Robert S. Sherrets, NE # 24791
SHERRETS BRUNO & VOGT LLC
260 Regency Parkway Drive, Ste. 200
Omaha, Nebraska 68114
Tele:   (402) 390-1112
Fax:   (402) 390-1163
Email: law@sherrets.com
ATTORNEY FOR THE PLAINTIFFS

8